**United States District Court**
**District of Massachusetts**

```
_____
                               )
JASON DAVENPORT,               )
         Plaintiff,            )
                               )
         v.                    )        Civil Action No.
                               )        12-11740-NMG
NATGUN CORPORATION,            )
         Defendant.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

In the instant case, plaintiff Jason Davenport ("Davenport") alleges that his former employer, defendant Natgun Corporation ("Natgun"), terminated him on the basis of several objectionable reasons.  Defendant now moves to dismiss.

## I.  Background

Plaintiff Davenport worked as a Laborer at defendant Natgun, which designs water storage tanks for municipalities.  He suffered a broken ankle on a job site in October, 2009 and claims to have heard that defendant Natgun was aggravated because it was the second time he had been injured in 2009.  He was cleared to resume working in December, 2009 but was not given any assignments and, in January, 2010, he was terminated.

About eight months after his termination, plaintiff filed a complaint with the Massachusetts Commission Against Discrimination ("the MCAD").  Although defendant purportedly

-1-

advertised openings for the position of Laborer and Laborer
Foreman during that time, plaintiff does not allege that he
sought and was denied a position after he filed his MCAD
complaint.

Plaintiff withdrew the MCAD complaint in order to pursue the
instant case and filed a Complaint in Massachusetts Superior
Court for Middlesex County in June, 2012.  Defendant duly removed
the case to this Court in September, 2012 and filed the pending
motion to dismiss.

Plaintiff brings seven claims: Counts I and II allege
violations of the Massachusetts Workers' Compensation Act, M.G.L.
c. 152, §§ 75A and 75B ("MWCA"); Counts III and IV allege
handicap discrimination under the Massachusetts Anti-
Discrimination Statute, M.G.L. c. 151B ("Chapter 151B") and the
Americans with Disabilities Act ("ADA"); Counts V and VI allege
retaliation under both Chapter 151B and the ADA; and Count VII
alleges a violation of the Federal Rehabilitation Act ("FRA").

## II.  **Analysis**

Defendant has moved to dismiss all counts for failure to
state claims upon which relief can be granted pursuant to Fed. R.
Civ. P. 12(b)(6).

### A.   **Legal Standard**

To survive a motion to dismiss for failure to state a claim
under Fed. R. Civ. P. 12(b)(6), a complaint must contain

"sufficient factual matter" to state a claim for relief that is
actionable as a matter of law and "plausible on its face."
Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially
plausible if, after accepting as true all non-conclusory factual
allegations, the court can draw the reasonable inference that the
defendant is liable for the misconduct alleged. Ocasio-Hernandez
v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  A court may
not disregard properly pled factual allegations even if actual
proof of those facts is improbable. Id.  Rather, the relevant
inquiry focuses on the reasonableness of the inference of
liability that the plaintiff is asking the court to draw. Id. at
13.  When rendering that determination, a court may not look
beyond the facts alleged in the complaint, documents incorporated
by reference therein and facts susceptible to judicial notice.
Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

### B.   Counts I and II: Massachusetts Workers' Compensation Act Claims

Section 75A of the MWCA requires employers to grant a
preference in favor of re-hiring injured employees, provided that
suitable work is available.  Section 75B of the MWCA prohibits an
employer from discriminating against any employee because the
employee obtained worker's compensation.  Importantly, both
provisions provide that if either right is "inconsistent with an
applicable" collective bargaining agreement ("CBA") then the CBA

-3-

will prevail. <u>See</u> M.G.L.c. 152, §§ 75A, 75B.

Defendant argues that plaintiff's claims under the MWCA are preempted by Section 301(a) of the Labor Management Relations Act ("the LMRA") because plaintiff was a member of a branch of the AFL-CIO ("the Union") that was a party to a CBA with defendant. State law employment claims are preempted by Section 301(a) when the claim "plausibly can be said to depend upon the meaning of one or more provisions within" the CBA. <u>See</u> <u>Haggins</u> v. <u>Verizon New England, Inc.</u>, 648 F.3d 50, 54-55 (1st Cir. 2011).

The preemptive force of Section 301(a), when coupled with the text of the MWCA requiring courts to search for inconsistencies between the statute and the CBA, is fatal to plaintiff's MWCA claims. <u>See Sullivan</u> v. <u>Raytheon Co.</u>, 262 F.3d 41, 50 (1st Cir. 2001) (noting § 75B claim preempted not because relevant CBA was inconsistent with claims asserted "but because it <u>may</u> be so and requires interpretation"). Although not expressly contained within the Complaint, plaintiff concedes in his opposition to defendant's motion that, as defendant's employee, he was a member of the Union. The CBA to which he was therefore a party contains provisions granting defendant the right to re-hire any employee who has previously worked for defendant for four months and to accept or reject any applicants referred to it by the Union once the pool of potential "re-hires" has emptied. The CBA also guarantees that any referrals so made

-4-

by the Union must be on a non-discriminatory basis.  Because the
Court is compelled to interpret those provisions to determine
whether they conflict with Sections 75A and 75B of the MWCA
before plaintiff may bring claims under that statute, the claims
"plausibly" depend upon the meaning of the CBA. Cf. Sullivan, 262
F.3d at 50 (preempting plaintiff's claim where CBA provision
granting broad supervisory discretion could conflict with section
75B).  Accordingly, plaintiff's MWCA claims are preempted and
will be dismissed.

## C.   Counts III and IV: Chapter 151B and American's with Disabilities Act Claims

Defendant contends that plaintiff's disability
discrimination claims under Chapter 151B and the ADA must fail
because plaintiff has not adequately alleged that he is disabled
under either statute.

Chapter 151B is the Massachusetts analogue to the ADA and
the definitions of "disability" under the ADA and "handicapped"
under Chapter 151B are "virtually identical." Sensing v. Outback
Steakhouse of Florida, LLC, 575 F.3d 145, 153-54 (1st Cir. 2009).
The Court will, therefore, interpret plaintiff's Chapter 151B
claim in accordance with federal case law interpreting the ADA.
See id. (noting Massachusetts courts follow same practice).

To recover for disability discrimination under the ADA, a
plaintiff must show that 1) he suffers from a disability within
the meaning of that statute; 2) he was, nevertheless, qualified

-5-

for the job; and 3) he was discharged, in whole or in part,
because of his disability. <u>See</u> <u>Lessard</u> v. <u>Osram Sylvania, Inc.</u>,
175 F.3d 193, 197 (1st Cir. 1999).  "Disability" has three
statutory definitions:

> (A)  a physical or mental impairment that substantially
>      limits one or more of the major life activities of
>      that individual,
>
> (B)  a record of such an impairment or
>
> (C)  being regarded as having such an impairment.

<u>Id.</u> (citing 42 U.S.C. § 12102(2)).  Among many others, "working"
qualifies as a major life activity but it is only substantially
limited if the plaintiff can show that his disability prevented
him from performing a "class" or "broad range" of jobs.  <u>Id.</u>

 Plaintiff does not allege that his broken ankle in fact
"substantially limited" his ability to work.  To the contrary,
plaintiff claims that his ankle injury had healed fully by
December, 2009 and that he was not re-hired in spite of his
recovery.  Accordingly, plaintiff's allegations leave only the
third definition, being "regarded as" disabled, at issue.

 For an ADA plaintiff to be "regarded as" disabled he must
show that defendant mistakenly believed that plaintiff 1) has a
limiting impairment that plaintiff does not have, or that 2)
plaintiff's actual, non-limiting impairment, limits one or more
major life activities. <u>See</u> <u>Roman-Oliveras</u> v. <u>Puerto Rico Elec.</u>
<u>Power Auth.</u>, 655 F.3d 43, 49 (1st Cir. 2011).  A plaintiff cannot

merely show that defendant perceived him as "somehow disabled"
but must prove that defendant regarded him as "disabled within
the meaning of the ADA." Ruiz Rivera v. Pfizer Pharmaceuticals,
LLC, 521 F.3d 76, 83 (1st Cir. 2008).

Plaintiff alleges that defendant was aggravated about his
broken ankle because it was the second time that he had been
injured that year.  Plaintiff argues that, consequently,
defendant regarded plaintiff as "damaged goods" and fired him.
That allegation permits an inference that defendant terminated
plaintiff because it mistakenly believed his broken ankle had
not, and would not, fully heal, in spite of plaintiff's own
insistence that it had.  When coupled with the allegations that
plaintiff received positive performance reviews prior to the
accident and defendant refused to hire him back for light duty or
to resume his regular job, it may be inferred that defendant also
mistakenly believed that plaintiff's broken ankle substantially
limited his ability to work in a broad range of jobs. Cf. O'Leary
v. InfraSource Transmission Services Co., 758 F. Supp. 2d 9, 26
(D. Me. 2010) (denying summary judgment where employer may have
taken adverse employment action because employee's broken ankle
took longer than usual to heal).

At this early stage in the litigation, the Court cannot say
that plaintiff's disability discrimination claims fail to state a
plausible claim for relief.  Accordingly, defendant's motion to

dismiss those counts will be denied.

   **D.   Counts V and VI: Retaliation Claims under Chapter 151B
        and the ADA**

   Defendant contends that plaintiff's retaliation claims under
Chapter 151B or the ADA fail to demonstrate the requisite causal
nexus because plaintiff was fired before he engaged in any
protected activity, i.e. his filing of a complaint with the MCAD.
See Sullivan, 262 F.3d at 48-49 (finding no causal nexus where
employee's protected conduct, filing with MCAD, occurred three
months after his firing).  Here, plaintiff was terminated in
January, 2010 and filed his MCAD claim approximately eight months
later, in September, 2010.

   Plaintiff argues that defendant constantly hires laborers
but refused to rehire him after he filed an MCAD complaint.
Plaintiff does not, however, allege he actually sought employment
at Natgun after engaging in that protected activity.  His
position misconstrues an earlier decision by this Court in which
it found that an employee who filed an MCAD complaint three days
after being denied a promotion and who was not later promoted
while the position remained open in spite of her subsequent
application, could plausibly claim her denial was retaliatory.
Flipp v. Town of Rockland, 613 F. Supp. 2d 141, 147 (D. Mass.
2009).  The comparatively short amount of time that elapsed
between Flipp's promotion denial and her complaint and the fact
that she subsequently applied for that position distinguish that

-8-

case from plaintiff's circumstances here.

The Court declines to stretch the meaning of "retaliation" so far on the basis of plaintiff's tenuous allegations with respect to a causal nexus.  Accordingly, defendant's motion to dismiss will be allowed as to those claims.

### E.   Count VII: Federal Rehabilitation Act Claim

Apart from demonstrating a qualifying disability, whether defendant is a recipient of federal financial assistance is an "indispensable jurisdictional element" of an FRA claim. Steir v. Girl Scouts of the USA, 383 F.3d 7, 13 (1st Cir. 2004). Plaintiff alleges that defendant designs and builds storage tanks for municipalities which, in turn, receive federal assistance.

Plaintiff's claim fails as a matter of law because defendant is not such a "recipient."  Under the FRA, a "recipient" of federal funds means any entity to which federal financial assistance is "extended directly or through another recipient" but excludes the "ultimate beneficiary of the assistance." Federal Rehabilitation Act Definitions, 45 C.F.R. § 84.3 (2005). As explained by the Supreme Court, the FRA prohibits disability discrimination by entities that Congress intended to receive federal financial assistance but does not reach those "who merely benefit from the aid." U.S. Dept. of Transp. v. Paralyzed Veterans of Am., 477 U.S. 597, 607 (1986) (holding commercial

airlines not "recipients" of federal financial assistance directed at airport operators).

By the same token, assuming that municipalities that contract with defendant are the intended recipients of federal financial assistance, at best, defendant "merely benefitted" from that aid.  Defendant's motion to dismiss plaintiff's FRA claim will, therefore, be allowed.

### ORDER

In accordance with the foregoing, defendant's motion to dismiss (Docket No. 10) is, with respect to Counts III and IV, **DENIED,** but with respect to all other counts, **ALLOWED.**


**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated March 7, 2013